USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 8-17-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REGENLAB USA LLC,

            Plaintiff,

-against-

ESTAR TECHNOLOGIES LTD., ECLIPSE AESTHETICS LLC, and HEALEON MEDICAL, INC.,

            Defendants.

16-cv-08771 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff RegenLab USA LLC ("RegenLab") brings suit against Defendants Estar Technologies Ltd. ("Estar"), Eclipse Aesthetics LLC ("Eclipse"), and Healeon Medical, Inc. ("Healeon") for patent infringement. After initiating this action, RegenLab filed a related patent infringement suit against three medical practices that are customers of Eclipse. *See* No. 17-cv-03845 (the "Customer Suit"). Pending before the Court is a motion by Defendants Eclipse and Healeon for a preliminary injunction enjoining Plaintiff from continuing the Customer Suit or bringing other suits against their customers, and from having any further "improper" communications with either Eclipse's or Healeon's customers or making any statements that the product manufactured by Estar is, itself, infringing. Eclipse and Healeon also seek to sever themselves from this action and stay the case as to them, pending resolution of the case against Estar. For the reasons that follow, the Court denies the motion in large part.

## BACKGROUND

### I. Factual Background

RegenLab is the exclusive licensee of the 2013 patent for "[c]ell preparations for extemporaneous use, useful for healing and rejuvenation in vivo," U.S. Patent Number 8,529,957

(the '957 patent). ECF No. 1 ("Compl."), at ¶ 71. RegenLab markets and distributes "products for preparing platelet rich plasma," or PRP, based on the '957 patent. *Id.* ¶¶ 75-76. It alleges that Estar manufactures a number of products whose use infringes on the '957 patent, including Mycells, Tropocells, Eclipse PRP, and Healeon PRP. *Id.* ¶¶ 23, 47, 49-54, 66-70. Eclipse is Estar's sole distributor of the Eclipse PRP product in the United States. *Id.* ¶ 48. Healeon serves as Eclipse's distributor of the Healeon PRP product. *Id.* ¶ 65.

In the Complaint, RegenLab alleges that "Defendants have been and still are directly infringing one or more claims of the '957 patent," *id.* ¶ 83; however, it has since clarified that it only claims infringement related to Claim 20 of the patent, which is a method claim. Transcript of Aug. 2, 2017 Oral Argument ("Tr."), at 3:13-4:16, 12:10-16, 13:3-14. Claim 20 details "[a] process for the preparation of a cell composition." '957 Patent, Columns 39-40.[1] In broad strokes, the steps are: (1) centrifuging whole blood in a separator tube containing a thixotropic gel; (2) optionally separating the enriched platelet rich plasma from full plasma; (3) re-suspending either the enriched platelet rich plasma or the full plasma to form a platelet concentrate; and (4) admixing the platelet concentrate with any number of different cell extracts, including fat cells, bone marrow cells, and stem cells. *Id.*

Plaintiff contends that Estar, Eclipse, and Healeon are infringing the '957 patent by marketing and selling the various PRP products that, when used according to the FDA-approved instructions, constitute an infringement of Claim 20. Compl. ¶ 81-96; Tr. 4:11-16. It asserts that Defendants' conduct constitutes contributory infringement and an inducement to others to infringe. Defendants also may be directly infringing if they perform the steps outlined in Claim

---

[1] A copy of the '957 patent is publicly available at
https://docs.google.com/viewer?url=patentimages.storage.googleapis.com/pdfs/US8529957.pdf.

20 during product demonstrations, for example.

**II. Procedural Background**

Plaintiff initiated this action in November 2016. Since that time, the parties have engaged in nearly continuous motion practice. First, Estar filed a motion to dismiss, arguing that the Court lacks personal jurisdiction over it. ECF Nos. 42-44. At the same time, Eclipse and Healeon filed motions to dismiss for improper venue or, alternatively, to transfer this case to the Northern District of Texas. ECF Nos. 45-50. While both of those motions were pending, together with RegenLab's related request for jurisdictional and venue discovery, Eclipse and Healeon filed the instant motion seeking a variety of injunctive and equitable relief. ECF Nos. 89 (Motion), 90 (Defs' Memo. and Appendix).

This latest motion was prompted by RegenLab filing a related suit against customers of Eclipse: three medical practices either incorporated or doing business in New York. *See* No. 17-cv-03845. In their motion, Eclipse and Healeon seek to stay the Customer Suit, arguing that RegenLab initiated the suit in bad faith to harass Eclipse's customers. They further seek to enjoin RegenLab from filing additional suits against their customers or otherwise communicating with them in a misleading way regarding the nature of the alleged infringement. Finally, Eclipse and Healeon ask the Court to sever them from this action and stay the case as to them in favor of proceeding against Estar alone.

RegenLab filed its opposition on July 24, 2017, *see* ECF Nos. 93 (Pl's Memo.), 94 (Declaration of John Pezzillo ("Pezzillo Decl.")), and the Court heard oral argument on August 2, 2017. The Court now considers the motion fully submitted.

## DISCUSSION

### I. Injunction of Customer Suit and Future Customer Suits

Eclipse and Healeon argue that RegenLab brought the Customer Suit in bad faith to bolster its venue arguments in this action and to harass Eclipse's and Healeon's customers, making a number of arguments going to the merits of the Customer Suit. On this basis, they contend that the Court should enjoin RegenLab's further prosecution of the Customer Suit and any future suits against their customers. For the reasons that follow, the Court denies this motion without prejudice.

As an initial matter, all of the parties seem to be operating under the assumption that some version of the traditional preliminary injunction standard is applicable here. Defendants focus on their likelihood of success on the merits and irreparable harm, and RegenLab points out that Defendants did not consider the balance of the hardships or the public interest. *See* Defs' Memo. at 9-11; Pl's Memo. at 16.[2] However, consistent with the Federal Circuit's decision in *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990), the Court concludes that because Eclipse and Healeon are seeking "to enjoin the prosecution of concurrent litigation . . . it is not controlling whether the plaintiff is likely to succeed on the merits. Instead, a primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz*, 909 F.2d at 1463; *accord ProBatter Sports, LLC v. Joyner Technologies, Inc.*, 463 F. Supp. 2d 949, 955-56 (N.D. Iowa 2006) (applying *Katz*).[3]

---

[2] None of the decisions cited by Plaintiff arise under analogous circumstances. Pl's Memo. at 9. Rather, they all involve the quintessential motion for preliminary injunction that seeks a preliminary grant of the ultimate relief sought by the particular suit. Eclipse and Healeon, by contrast, cite *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990), and *ProBatter Sports, LLC v. Joyner Technologies, Inc.*, 463 F. Supp. 2d 949, 955-56 (N.D. Iowa 2006), discussed further in this section, while still applying the traditional preliminary injunction standard. Defs' Memo. at 5-6.

[3] The Court is aware that one district court determined that this aspect of *Katz* was overruled by *eBay Inc. v.*

Accordingly, while styled as a motion for preliminary injunction, in reality, Eclipse and Healeon are seeking to stay the Customer Suit as the second-filed action based on principles of judicial economy. This Court has broad discretion when deciding to stay a suit pending before it. This discretion is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Here, there are countervailing efficiencies at play. On one hand, it is well-established that "liability for inducement must be predicated on direct infringement." *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014). That is, "inducement liability may arise 'if, but only if, [there is] . . . direct infringement.'" *Id.* (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961)) (alteration in original). As a result, Defendants in this case cannot be liable for inducing infringement if, in fact, the defendants in the Customer Suit or other potential physician defendants did not perform all of the steps required for Claim 20.

In declarations from their principals, the defendants in the Customer Suit assert that they do not perform the final, admixing step of Claim 20 when they use the Eclipse PRP product on their patients. Defs' App'x 94-108 (Declarations of Dr. Raj Kanodia, Dr. Theodore J. Daly, and Dr. Edward Fruitman). RegenLab concedes that, if these declarations prove true, they have

---

*MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), in light of the Supreme Court's articulation of the general rule that the "familiar principles [of equity] apply with equal force to disputes arising under the Patent Act." *See Finisar Corp. v. Cheetah Omni, LLC*, 2012 WL 12931575, at *3 (E.D. Mich. Nov. 19, 2012). However, the Supreme Court was not discussing *Katz* or a procedurally-similar case and the Court finds that the Federal Circuit's decision in *Katz* is not so much a "departure from the long tradition of equity" as it is an application of longstanding precedent that anti-suit injunctions are different than injunctions that seek a preliminary grant of the ultimate relief sought in the suit. *See eBay*, 547 U.S. at 391. *Katz* relied on the Supreme Court's decision in *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952), for this proposition. And, as the district court in *ProBatter* noted, "[o]ther circuit courts of appeal have similarly narrowed the inquiry in the context of foreign antisuit injunctions." 463 F. Supp. 2d at 955 n.8 (collecting cases).

no claim for inducing infringement against Defendants in this action, Tr. at 26:1-4, but do not offer any evidence to suggest that these declarations are false. Rather, Plaintiff's argument seems to be that, in order to use the Eclipse PRP product in an FDA-compliant manner, the admixing step must be performed. *Id.* at 26:5-22. As discussed at length during oral argument, it remains entirely possible that these defendants are using the products in a non-FDA-complaint way, however. *See id.* at 16:10-17:3, 29:16-22 (defense counsel discussing off-label use). Indeed, the video published on defendant Raj Kanodia, M.D.'s website, which RegenLab cites in the Customer Suit complaint, does not show Dr. Kanodia performing the admixing step as far as the Court can tell. *See* Customer Compl. ¶ 45.

On the other hand, Eclipse and Healeon argue for the first time that they intend to challenge the validity of the '957 patent. Defs' Memo. at 9. Their argument regarding the invalidity of the patent—a single paragraph in a 21-page brief—is entirely too conclusory for the Court to feel comfortable enjoining further prosecution of the Customer Suit on that basis. Ultimately, however, on a greater showing by Defendants, it may be more efficient to litigate the question of patent validity in one, rather than both, cases. *See, e.g., Vantage Point Tech., Inc. v. Amazon.com, Inc.*, 2015 WL 123593, at *3-5 (E.D. Tex. Jan. 6, 2015) (declining to stay case where customers did not disclaim their right to challenge invalidity); *Telebrands Corp. v. Nat'l Exp., Inc.*, 2014 WL 4930897, at *5 (D.N.J. Oct. 2, 2014) (finding it more efficient to proceed with first-filed case where question of patent validity raised in earlier suit); *Ultra Prod., Inc. v. Best Buy Co.*, 2009 WL 2843888, at *5 (D.N.J. Sept. 1, 2009) (same). If the '957 patent is not valid, it does not matter whether the defendants in the Customer Suit performed the admixing step. However, if the question of patent validity is resolved in Plaintiff's favor, it no longer would be efficient to stay the Customer Suit given that Defendants' liability for inducing

infringement depends, in part, on the direct infringement of the defendants in the Customer Suit.

For the same reason, the Court will not enjoin RegenLab from filing other suits against Eclipse's or Healeon's customers. Additionally, although Eclipse and Healeon refer to their "customers" as a uniform group, it is not clear that these customers are all physicians who use the PRP products on their patients. For instance, Eclipse contends that Healeon is *its* customer. Defs' Memo. at 1. Likewise, there is nothing in the record to suggest that other physician or healthcare group defendants would be able to raise the lack of direct infringement defense as the defendants in the Customer Suit. *See* Pl's Memo. at 13-15 (describing other customers who more readily appear to perform the admixing step).

## II. Injunction of Various Communications by RegenLab

Next, Eclipse and Healeon seek to enjoin RegenLab from communicating with Eclipse's and Healeon's customers or otherwise publishing misleading information about this case. While Eclipse and Healeon acknowledge that RegenLab has an absolute right to assert its patent rights and communicate the facts of those suits publicly, they argue that Plaintiff's failure to explain that the Customer Suit involves a method claim is confusing and is causing them irreparable harm. Defs' Memo. at 7.

Unlike an injunction of the Customer Suit itself, the pending motion to enjoin RegenLab's communications is governed by the ordinary preliminary injunction standard in which the moving party must show: "(1) that he or she will suffer irreparable harm absent injunctive relief, and (2) either (a) that he or she is likely to succeed on the merits, or (b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation and internal quotation

marks omitted). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Id.*; *accord New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) ("Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.") (citation and internal quotation marks omitted).

Regarding irreparable harm, Eclipse and Healeon argue that RegenLab's communications are harming their customer base and goodwill in the industry. Defs' Memo. at 16; Defs' App'x 76-93 (Declaration of Thomas O'Brien ("O'Brien Decl.")).[4] However, in making this argument, they conflate the harm being caused by two different allegedly problematic documents: RegenLab's press release regarding the Customer Suit and its communications with the defendants in the Customer Suit. While the language in each document is similar, their potential impact on Eclipse is not. Eclipse's Chief Executive Officer does not explain how the letter RegenLab sent to the three defendants in the Customer Suit has harmed Eclipse. For instance, he does not contend that these defendants told any other industry participants about the letters, such that their reach would extend beyond the parties to that case. *Cf.* O'Brien Decl. ¶¶ 16, 18 (describing impact of dissemination of press release). Moreover, RegenLab's letter to the three defendants in the Customer Suit was accompanied by the complaint which it had already filed, obviating any potential confusion regarding the nature of the suit. O'Brien Decl.., Ex. 1 (Letter dated May 23, 2017 from RegenLab's counsel to Garden City Dermatology, P.C.).

With respect to the press release, O'Brien states that Eclipse PRP is its largest source of revenue and that Eclipse's "reputation, goodwill, and standing within the aesthetic medical

---

[4] This motion is made jointly by Eclipse and Healeon, but the communications relate only to the Eclipse PRP product and only Eclipse has provided an affidavit regarding its harm.

8

community has [*sic*] been severely damaged" by RegenLab's statements. *Id.* ¶ 13. The closest he comes to a concrete example of the harm is that Eclipse "has had sales from customers that [it] was not able to complete because of the pending lawsuit against Eclipse customers and the communications sent out by RegenLab and their representatives." *Id.* ¶ 15. However, it is not clear why this harm, in particular, could not be remedied by monetary damages. *See Actavis PLC*, 787 F.3d at 660. And, as a general matter, the Court agrees with Plaintiff that O'Brien's declaration is entirely too conclusory to support a finding that Eclipse will be irreparably harmed. Pl's Memo. at 10, 17. *Cf. T.J. Roaco, Ltd. v. Syntex Pharm. Int'l, Ltd.*, 1985 WL 5412, at *2 (D.N.J. Aug. 16, 1985) (plaintiff presented evidence that each customer who received communication at issue contacted plaintiff to express concern, some began returning allegedly infringing product, and product made up 90% of plaintiff's revenue).

Having found that Eclipse and Healeon failed to meet their burden on the question of irreparable harm, the Court need not address the question of likelihood of success on the merits. However, the Court notes briefly that Eclipse and Healeon largely gloss over this element. Even reading their brief generously, they focus on the merits of the Customer Suit, as opposed to their likelihood of success on the merits in this action or in their request for the permanent relief they seek preliminarily here. Defs' Memo. at 16-17.

Despite Eclipse and Healeon's failure to satisfy the preliminary injunction standard, the Court is concerned that the press release is easily misconstrued by those without significant patent law expertise. Eclipse and Healeon argue that other district courts have enjoined similar communications with customers where the communications were found to be made in "bad faith." Defs' Memo. at 15-16 (citing *T.J. Roaco*, 1985 WL 5412; *Etna Products Co. v. Finney*, 1993 WL 60708 (S.D.N.Y. Feb. 26, 1993); and *Lucasey Mfg. Corp. v. Anchor Pad Int'l, Inc.*,

9

698 F. Supp. 190 (N.D. Cal. Apr. 26, 1988)). In *Lucasey*, when discussing the moving party's likelihood of success on the merits, the court explained that, "[t]o be in good faith, the communications to the customer must not contain any misstatements or other language which is unsupported by the allegations of the complaint in the pending infringement action." 698 F. Supp. at 193; *accord Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 710 (Fed. Cir. 1992), *abrogated on other grounds by Impression Prod., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523 (2017).

The Court is not prepared to find that RegenLab has acted in bad faith in publishing a press release regarding the Customer Suit; however, the wording of the press release is confusing. At oral argument, RegenLab asserted that its press release was drafted by an outside company to reflect the allegations in the Customer Suit complaint. Tr. 23:9-15. While that may be true, the press release does not explain clearly that the Customer Suit involves a method patent claim and that the product has non-infringing—albeit off-label—uses. *See* O'Brien Decl., Ex. 2 (Press Release dated May 24, 2017). In the press release, RegenLab asserts that "Estar/Eclipse . . . copied RegenLab's products that incorporate the technology of the '957 patent to develop the[] infringing products," and that defendants in the Customer Suit "are believed to be customers of Estar/Eclipse who use, sell, and offer for sale the Eclipse PRP product. Such actions make them liable for direct infringement, contributory infringement, and inducing others to infringe RegenLab's patent rights." *Id.*

As RegenLab stated at oral argument, "if there's something specific that we're not supposed to say, I'm happy to hear it and we won't say it." Tr. 24:3-5; *see also id.* at 23:15-19. The Court finds that revisions to the press release would be useful to mitigate any potential confusion regarding the nature of the claims. As discussed in the previous section, RegenLab

10

concedes that a physician who merely uses the Eclipse PRP or Healeon PRP product, but does not perform the admixing step, has not infringed its patent. By contrast, the press release could be read to suggest that use of any kind of the Eclipse PRP product makes an individual liable for infringing RegenLab's patent rights. The parties should meet and confer to determine how RegenLab can more clearly and accurately articulate the contours of its claim to the public.

### III. Stay and Sever

Finally, Eclipse and Healeon move to sever themselves from this case and to stay the action against them while the Court continues the proceeding against Estar. Their request is based on the "customer suit exception." However, as Eclipse and Healeon concede, this action is not a typical application of the customer suit exception. For the reasons that follow, the Court exercises its discretion to deny Eclipse and Healeon's request without prejudice.

The customer suit exception originated as an exception to the first-filed rule, under which subsequently filed related cases yield to the first-filed action. If a patent suit by or against a manufacturer was filed after the suit against the manufacturer's customers, who could be deemed "mere resellers," the first-filed customer suit would nevertheless be stayed in favor of the manufacturer suit. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014). The justification for this rule is that the customer should not be burdened by having to defend a case where the manufacturer is the "true defendant." *Id.* (citation omitted); *see also Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (manufacturer is "presumed [to have] greater interest in defending its actions against charges of patent infringement"). Proceeding against the manufacturer alone "facilitate[s] just, convenient, efficient, and less expensive determination," *Nintendo*, 756 F.3d at 1365, where litigation against the manufacturer will "resolve the 'major issues' concerning the claims against the customer," *Spread Spectrum*

11

*Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (quoting *Katz*, 909 F.2d at 1464).

In *Nintendo*, the Federal Circuit found that "the same general principles" applied where the manufacturer and customer defendants were in the same multi-defendant case, allowing the customers to be severed from the case and then have it stayed as to them. *Nintendo*, 756 F.3d at 1365. Despite this, some courts continue to find that the customer suit exception is inapplicable where a single case contains both the manufacturer and the reseller. *See, e.g., Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 2016 WL 8738221, at *2 (S.D. Cal. May 13, 2016) (noting that not all courts find it appropriate to stay suit under these circumstances); *Edizone, LLC v. Schering-Plough Healthcare Products, Inc.*, 2011 WL 1559944, at *2 (D. Utah Apr. 25, 2011); *cf. Telebrands Corp.*, 2014 WL 4930897, at *3. The Court is persuaded by the Federal Circuit's ruling in *Nintendo* that the customer suit exception may have application in a single case involving multiple parties in the retail chain, but nevertheless finds that the customer suit exception does not counsel in favor of granting Eclipse and Healeon's motion to stay and sever.

First, RegenLab asserts a method claim. Courts discussing the customer-suit exception in the method claim context often determine that the policy considerations underpinning the exception are not implicated. *See, e.g., Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 2016 WL 1659924, at *4 (E.D. Tex. Apr. 26, 2016) (collecting cases). The Court agrees with the decisions drawing this distinction. It is a logical application of the customer suit exception because its purpose is to "resolve the 'major issues' concerning the claims against the customer." *Spread Spectrum Screening*, 657 F.3d at 1358 (quoting *Katz*, 909 F.2d at 1464).

Here, as in other method patent cases, each of the parties could be found liable for different reasons, and Estar's liability does not necessarily dictate that either Eclipse or Healeon

will be found liable. *See ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1360 (Fed. Cir. 2015) ("Inducement requires such steps as encourag[ing], recommend[ing], or promot[ing] an infringing use.") (internal citations and quotation marks omitted, alteration in original). For instance, if Healeon is found to have designed the instructions on the Healeon PRP product that Plaintiff alleges induce infringement of Claim 20 without Estar's input or approval, it may be liable and Estar not. Similarly, Eclipse potentially could be found liable for inducing infringement on the basis of its product demonstrations, in which, presumably, Estar has no involvement. Conversely, Estar could be found liable for inducing infringement based on the manufacture and sale of the Mycells or Tropocells products, with which Eclipse and Healeon may not have any involvement. Pezzillo Decl. ¶¶ 14-15 (describing Estar's promotion of Tropocells product at recent convention).

Presumably, it is for this reason that neither Eclipse nor Healeon have agreed to be bound by any determination in the case if it proceeds against Estar. *See, e.g., Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) (considering, *inter alia*, whether defendants agreed to be bound by any decision in favor of manufacturer). Nor has Estar conceded that it is the "true defendant." *See, e.g., Uropep GbR*, 2016 WL 1659924, at *2 (manufacturer defendant argued that it was true defendant). In fact, in earlier court filings, Estar disclaimed having any relationship with Healeon whatsoever. ECF No. 44 (Affidavit of Aaron Esteron), at ¶ 36. While it concedes a relationship with Eclipse, Estar asserts that it has no indemnification obligations as to the allegations in this action. *Id.* ¶¶ 24-35.

Furthermore, the procedural posture of this case counsels against severing Eclipse and Healeon so that RegenLab may proceed against Estar alone. It would be premature for the Court to decide whether to proceed against Estar when Estar has a pending motion challenging

this Court's jurisdiction over it. If the Court concludes that Estar is not subject to the Court's jurisdiction, judicial efficiency will not be served by an order requiring RegenLab to litigate this case against Estar.

## CONCLUSION

For all of the foregoing reasons, the Court denies without prejudice Eclipse and Healeon's motion to enjoin the Customer Suit and any future suits against their customers. The parties are directed to meet and confer regarding RegenLab's current and future press releases discussing this action or the Customer Suit. Finally, the Court denies without prejudice Eclipse and Healeon's motion to sever themselves from this action and stay it against them.

The Clerk of the Court is respectfully requested to close Docket Entry Number 89.

**SO ORDERED.**

Dated: August 17, 2017
New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**