USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __8-17-17__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

REGENLAB USA LLC,

Plaintiff,

-against-

ESTAR TECHNOLOGIES LTD., ECLIPSE
AESTHETICS LLC, and HEALEON
MEDICAL, INC.,

Defendants.

---

16-cv-08771 (ALC)

OPINION AND ORDER

**ANDREW L. CARTER, JR., United States District Judge:**

Pending before the Court are partially-briefed motions by Defendant Estar Technologies

Ltd. ("Estar") to dismiss for lack of personal jurisdiction and by Defendants Eclipse Aesthetics

LLC ("Eclipse") and Healeon Medical, Inc. ("Healeon") to dismiss and/or transfer the case on

the basis of improper venue.   Plaintiff RegenLab USA LLC ("RegenLab") seeks discovery in

connection with each of these motions.   For the following reasons, the Court finds that some,

limited discovery will aid in the pending motions.

## BACKGROUND

The Court recites only those facts and procedural history necessary to resolve the motions

for jurisdictional and venue discovery.

RegenLab, the United States affiliate of a Swiss manufacturer of medical and

pharmaceutical products, brought suit against Estar, an Israeli company; Eclipse, a Texas entity

and the sole distributor of Estar products in the United States; and Healeon, a California entity

affiliated with Eclipse, alleging infringement of its '957 patent for "[c]ell preparations for

extemporaneous use, useful for healing and rejuvenation in vivo," used in platelet rich plasma

therapy products.   ECF No. 1 ("Compl.").

Estar filed a pre-answer motion to dismiss the Complaint against it for lack of personal jurisdiction. ECF No. 42. With its motion, Estar included the affidavit of its Chief Executive Officer, Aron Esteron, who provided testimony regarding certain jurisdictional facts. ECF No. 44 (Affidavit of Aron Esteron ("Esteron Aff.")). He testified that Estar is not registered to do business in New York; has no offices, employees, bank accounts, telephone listings, or other property in the district; has no customers in New York; and maintains only a passive website. Esteron Aff. ¶¶ 8-14, 17-21. Esteron also testified that Estar does not "transact any business" in New York, "regularly conduct or solicit business" there, or derive "any substantial revenue from goods used or consumed or services rendered in New York." *Id.* ¶¶ 15-16. Esteron denied that Estar sells any products to Healeon. *Id.* ¶ 36. Esteron did, however, describe the distribution agreement between Estar and Eclipse (the "Distribution Agreement"), which the Court ordered Estar to produce pursuant to a protective order. *Id.* ¶¶ 23-35; ECF No. 57.

Eclipse and Healeon also moved to dismiss this action, but on the basis of improper venue under the patent venue statute, 28 U.S.C. § 1400(b), or, alternatively, to transfer this action to the Northern District of Texas for convenience under 28 U.S.C. § 1404(a). ECF Nos. 45 (Eclipse Motion), 47 (Healeon Motion). With respect to the propriety of venue in this district—the relevant argument for present purposes—each asserted that it does not have a "regular and established place of business" in this district. Like Estar, Eclipse and Healeon also submitted affidavits from their principals: Thomas O'Brien, the Chief Executive Officer of Eclipse, and John Panik, the Chief Operating Officer of Healeon. ECF Nos. 49-3 (Declaration of Thomas O'Brien ("O'Brien Decl.")), 50-3 (Declaration of John Panik ("Panik Decl.")). O'Brien testified that, while Eclipse is registered to do business in New York and maintains a registered agent here, it has no bank accounts, does not own or rent real property, have a telephone number

or directory listing, and has no messaging or secretarial service in New York. O'Brien Decl.

¶¶ 7-12. Eclipse has two employees in New York who solicit sales of Eclipse's products;

however, these employees do not maintain any inventory, and bills and sales are processed

through Eclipse's office in Texas. *Id.* ¶¶ 13-15. Panik's testimony shows that Healeon has less

of a connection to New York than Eclipse. In addition to not having any bank accounts, rented

or owned real property, telephone numbers or directory listings, or messaging and secretarial

services in New York, Healeon also is not registered to do business in New York and has no

employees here. Panik Decl. ¶¶ 6-14.

After numerous attempts to encourage the parties to meet and confer regarding the scope

of potential venue and jurisdictional discovery, the Court ordered short letter briefing from the

parties regarding RegenLab's discovery requests. *See* ECF Nos. 75 ("Pl's Jx Ltr."), 76 ("Def's

Jx Ltr."), 85 ("Pl's Venue Ltr."), 86 ("Defs' Venue Ltr.").

## DISCUSSION

### I.      Discovery Related to Venue Motions[1]

Venue in this patent case is governed by 28 U.S.C. § 1400(b), which provides that patent

infringement actions "may be brought in the judicial district where the defendant resides, or

where the defendant has committed acts of infringement and has a regular and established place

of business." The Supreme Court's recent decision in *TC Heartland LLC v. Kraft Foods Grp.*

*Brands LLC*, 137 S.Ct. 1514 (2017), reaffirmed that a corporate defendant's residence, for

purposes of the first prong of § 1400(b), is where the entity is incorporated. In light of *TC*

*Heartland*, the parties agree that venue is improper in the Southern District of New York under

---

[1]  Eclipse and Healeon wisely have not argued that discovery is not appropriate in the context of venue motions.
*See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 & n.13 (1978).

the first prong of § 1400(b) because Eclipse and Healeon were incorporated in Texas and

California, respectively. Therefore, the question presented today is whether discovery is

necessary to determine that Eclipse or Healeon "has a regular and established place of business"

here.[2] For the reasons that follow, the Court finds that very limited discovery will be helpful to

adjudicate the pending motions to dismiss for improper venue.

Substantial confusion exists regarding the circumstances in which an entity will be found

to have a "regular and established place of business" in the district. In recent years, there has

not been much occasion to evaluate the second prong of the patent venue statute because the

Federal Circuit determined—wrongly, it turns out—that a defendant satisfied the residency

requirement of the venue statute's first prong if it was subject to personal jurisdiction in the

district. *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990),

*abrogated by TC Heartland*, 137 S. Ct. 1514 (2017). Accordingly, most parties and courts

focused on whether defendants were subject to personal jurisdiction in the district, which has a

more well-developed body of law.

To the extent courts addressed the second prong of § 1400(b), the jurisprudence is rather

rudderless. *See, e.g., Herbert v. Diagnostic Prod. Corp.*, No. 85-cv-0856 (TPG), 1986 WL

6781, at *2-3 (S.D.N.Y. June 10, 1986) (describing split of authority); *Lace v. Lace*, 1989 WL

103364, at *3 (N.D. Ill. Aug. 25, 1989) (noting "jumbled and irreconcilable nature of the case

law"). Some courts have found that "a regular and established place of business" requires a

---

[2] Eclipse and Healeon assert in passing that they have not committed acts of infringement in the Southern District of New York, a requirement under the second prong of § 1400(b). Defs' Venue Ltr. at 2 n.1. With respect to infringement, at this stage, it suffices that RegenLab alleges that each defendant made sales in New York of the product at issue. Compl. ¶¶ 17-18; *see also In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) (whether there was actually infringement is not considered on motion to dismiss for improper venue). If, however, Eclipse's and Healeon's argument is that they did not sell the relevant product in New York—putting aside the question of whether the product is, in fact, infringing—declarations to that effect should be provided.

"permanent physical location which defendant maintains, controls and pays for, and from which substantial business is conduct." *Herbert*, 1986 WL 6781, at *2 (collecting cases). In particular, this seems to have been the practice of district courts in the Southern District of New York. *See, e.g., id.*; *Hsin Ten Enter. USA, Inc. v. Clark Enterprises*, 138 F. Supp. 2d 449, 461 (S.D.N.Y. 2000); *Mastantuono v. Jacobsen Mfg. Co.*, 184 F. Supp. 178 (S.D.N.Y. 1960). Other courts, however, have held that a physical office or store in the district is not required to prove a regular and established place of business there. *See, e.g., Hemstreet v. Caere Corp.*, 1990 WL 77920, at *2 (N.D. Ill. June 6, 1990); *Brunswick Corp. v. Suzuki Motor Co.*, 575 F. Supp. 1412, 1424 (E.D. Wis. 1983).

The Federal Circuit's decision in *In re Cordis*, 769 F.2d 733 (Fed Cir. 1985) did little to resolve the confusion. This may be, in part, because of the procedural posture in which the Federal Circuit decided the case. In *Cordis*, the Federal Circuit denied a petition for a writ of mandamus ordering the district court to dismiss the action for improper venue. As the court noted, "mandamus is 'strong medicine' to be reserved for the most serious and critical ills." 769 F.2d at 737. The question on a petition for a writ of mandamus is not whether the district court committed reversible error, only whether there is a "rational and substantial legal argument [to] be made in support of the rule in question." *Id.*

The facts presented in *Cordis* were as follows: The defendant did not own or rent an office or other property in the district, have a bank account, or register to do business there. It did, however, engage a secretarial service in the district. The defendant also employed two sales representatives who worked out of home offices. These sales representatives maintained approximately $90,000 worth of inventory between them and were allowed to provide this inventory directly to customers. They also served as technical consultants for users of the

product. *See id.* at 735. On the basis of this record, the court found that there was "a rational and substantial legal argument" in support of the district court's ruling. *Id.* at 737. In so holding, the court also noted that, "in determining whether a corporate defendant has a regular and established place of business in a district, the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there and not . . . whether it has a fixed physical presence in the sense of a formal office or store." *Id.*

The parties here disagree on the import of the Federal Circuit's decision in *Cordis*. RegenLab argues that it holds that a physical presence is never required, *see* Pl's Venue Ltr. at 2-3, while Eclipse and Healeon argue that the procedural posture of *Cordis* makes it non-binding, and ask the Court to look at jurisprudence from other district and circuit courts, *see* Defs' Venue Ltr. at 2-3. However, it is not necessary to definitively resolve this question to decide whether venue-related discovery might be useful to any ultimate decision on the question of proper venue in this case. There was at least a "rational and substantial legal argument" for the lower court's decision to evaluate factors beyond whether the defendant owned or rented office space in the district. *Cordis*, 769 F.2d at 737. Even *Univ. of Ill. Found. v. Channel Master Corp.*, 382 F.2d 514, 516 (7th Cir. 1967), on which Defendants rely, suggests that the lack of a defendant-owned or controlled property in the district is not always dispositive.

Accordingly, and in the absence of any binding precedent directly on point, the Court finds that some additional factual development would be useful. However, the discovery previously requested by RegenLab is far broader than necessary. *See* Pl's Venue Ltr. at 1-9. Eclipse and Healeon must provide supplemental declarations that go into greater detail regarding the nature of their employees' and sales representatives' roles and duties and their relationship to

the respective companies.[3]   The parties should meet and confer regarding the precise contours of

these declarations, but, by way of example, Defendants should explain where their employees in

this district work and who pays for the work space; these employees' titles and duties, including

whether they provide any technical support for the companies' customers or perform

demonstrations of the produc at issuet; and more information regarding the employees' role in

the customer purchasing and sales process.   *See Channel Master Corp.*, 382 F.2d at 516.

## II.   Discovery Related to Personal Jurisdiction Motion

The Court also finds that limited discovery is warranted in connection with Estar's

motion to dismiss for lack of personal jurisdiction.   Generally, "[a] court should take care to

give the plaintiff ample opportunity to secure and present evidence relevant to the existence of

jurisdiction."   *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (citation and internal quotation

marks omitted).   Jurisdictional discovery is appropriate where the moving party has established

a *prima facie* case that the district court has jurisdiction.   *See Jazini v. Nissan Motor Co.*, 148

F.3d 181, 186 (2d Cir. 1998).   However, even if a plaintiff has not made a *prima facie* showing,

a court may nevertheless order discovery "when it concludes that the plaintiff may be able to

establish jurisdiction if given the opportunity to develop a full factual record."   *Leon v.

Shmukler*, 992 F. Supp. 2d 179, 194-95 (E.D.N.Y. 2014) (citing, *inter alia*, *In re Magnetic

Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003)).   Typically, this is warranted

where the plaintiff can show that there is "a colorable claim of jurisdiction."   *Shmukler*, 992 F.

Supp. 2d at 195 (citation and alteration omitted).

---

[3]  Healeon asserts that it has no employees in New York, but it is not clear whether the reference to "employees" is
intended to encompass those who might have a different business relationship with the company, such as an
independent sales representative.   Panik Decl. ¶ 12.   Healeon should provide that clarification and any additional
information regarding those employees or sales representatives as necessary.   In this Memorandum Order, the
Court uses the word "employee" broadly.

When evaluating whether it has "personal jurisdiction over a non-domiciliary in a case involving a federal question," a court first must "apply the forum state's long-arm statute." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). In New York, that statute is N.Y. C.P.L.R. § 302(a). Since Estar moved to dismiss this action, RegenLab has limited its jurisdictional arguments to C.P.L.R. § 302(a)(3). ECF No. 56 (Joint Status Report), at 1. This subsection of New York's long-arm statute provides that a court has jurisdiction over a defendant who "commits a tortious action" outside of New York that causes "injury to person or property within [New York]," if that defendant:

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302(a)(3).

The factual basis for RegenLab's § 302(a)(3) argument has shifted over time, however, from Estar's actual sales in the district (*see* Compl. ¶¶ 16, 19) to an agency theory (*see* ECF No. 31 at 2) to the argument it makes currently.[4] RegenLab now argues that Estar is subject to personal jurisdiction on the basis of its exclusive distribution agreement with Eclipse. Pl's Jx Ltr. at 1. Taking as true the allegations in the Complaint that Estar committed an act of infringement outside of New York that caused injury within the state as a result of Eclipse's sale of the relevant product here, the Court will address whether discovery is warranted as to each of the subsections of § 302(a)(3), in turn.

---

[4] RegenLab appears to have abandoned its agency theory of jurisdiction after receiving the Distribution Agreement, which expressly disclaims an agency relationship between Estar and Eclipse. *See* Distribution Agreement § 2.4.

## A.    C.P.L.R. § 302(a)(3)(i)

First, RegenLab seeks discovery to show that Estar "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." N.Y. C.P.L.R. § 302(a)(3)(i). In the Complaint, Estar alleges, broadly, that "Defendants have been doing business in this District." Compl. ¶ 15; *see also id.* ¶ 19 (allegations regarding Defendants, generally). Such a conclusory allegation will not suffice to provide a "colorable basis" for jurisdiction on the grounds that Estar "regularly does or solicits business" in New York. That is particularly true given Estar's CEO's testimony that Estar does not have an office, bank accounts, property, or employees in New York, is not registered to do business here, and that it only ships the Eclipse PRP product to Eclipse in Texas. Esteron Aff. ¶¶ 8-12, 25. Accordingly, no further discovery is warranted on this aspect of subsection (i).

RegenLab also has not made a colorable claim of jurisdiction on the basis of Estar's "persistent course of conduct" in New York under subsection (i) to justify further discovery on that topic. The only allegations in the Complaint regarding Estar are that it manufactures the products at issue in this action, presumably in Israel where it is based, and that it has a United States distribution agreement with Eclipse (a Texas company) and, perhaps, Healeon (a California company). *See, e.g.,* Compl. ¶¶ 7, 9, 12, 47-48, 65-66.[5] RegenLab does not allege any conduct, persistent or otherwise, by Estar in New York.

As to the third part of subsection (i)—substantial revenue from goods used or consumed

---

[5]  While RegenLab also alleges that Estar markets its products through an interactive website accessible to New Yorkers, RegenLab appears to have abandoned that claim. Compl. ¶ 16. In any event, Estar has shown that customers cannot purchase products through its website. Esteron Aff. ¶¶ 17-20, Ex. 1 (Screenshot of Estar Website).

in New York—some discovery is warranted. RegenLab alleges that Eclipse and Healeon sell

the relevant products in New York and that these products are manufactured by Estar. Compl.

¶¶ 17-18. In his affidavit, Esteron states, as fact, that Estar "does not derive any substantial

revenue from goods used or consumed or services rendered in New York." Esteron Aff. ¶ 16.

However, this is legal argument, parroting C.P.L.R. 302(a)(3)(i) nearly verbatim. While,

ultimately, Esteron's statement may prove to be true, without factual support for this assertion,

the Court cannot adjudicate Estar's pending motion. When evaluating whether a defendant

receives "substantial revenue" under C.P.L.R. 302(a)(3)(ii), "[n]o specific dollar threshold is

required . . . . [;] the main concern is the overall nature of the defendant's business and the extent

to which he can fairly be expected to defend lawsuits in foreign forums." *Ikeda v. J. Sisters 57,*

*Inc.*, No. 14-cv-3570 (ER), 2015 WL 4096255, at *5 (S.D.N.Y. July 6, 2015) (citation and

internal quotation marks omitted). The same should be true of the reference to "substantial

revenue" in subsection (i).

### B.     C.P.L.R. § 302(a)(3)(ii)

Discovery also is warranted on the question of personal jurisdiction under C.P.L.R.

§ 302(a)(3)(ii). Estar argues that because its Distribution Agreement with Eclipse does not give

Estar any control over where or how Eclipse sells the Eclipse PRP product, "Estar does not

expect[] [n]or should [it] reasonably expect [that its sales of the accused products to Eclipse

would] have consequences in the state." Def's Jx Ltr. at 2. However, Estar's control—or lack

thereof—over where its product is sold is not dispositive of whether it knows or cares where the

product is sold, which are the relevant questions here.

On this point, the parties disagree as to whether an exclusive distribution agreement

between a manufacturer and a company that sells the allegedly infringing product in New York

10

suffices to establish personal jurisdiction over the manufacturer. *See* Pl's Jx Ltr. at 3; Def's Jx Ltr. at 4. While that may be an open question in this district, ultimately it is not a question that must be resolved before determining whether discovery is appropriate. *See, e.g., Ikeda v. J. Sisters 57, Inc.*, No. 14-cv-3570 (ER), 2015 WL 4096255, at \*4-5 (S.D.N.Y. July 6, 2015) (discussing, *inter alia, Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242 (2d Cir. 1999)). Even *Tanner v. Heath Graphics LLC*, No. 15-cv-0098 (LEK) (CFH), 2017 WL 922013, at \*1 (N.D.N.Y. Mar. 8, 2017), on which Estar relies for its argument, allowed jurisdictional discovery. Def's Jx Ltr. at 4; *see also Ikeda*, 2015 WL 4096255, at \*9-10 (ordering jurisdictional discovery).

Whether or not the Distribution Agreement between Estar and Eclipse is sufficient on its own to establish personal jurisdiction over Estar, as a result of that business relationship, Estar may have information that would cause it to "expect" or "reasonably expect" sales in New York. Indeed, certain portions of the Distribution Agreement suggest that information relevant to this inquiry was provided to Estar. *See, e.g.*, Distribution Agreement §§ 7.5 (Eclipse will provide information to Estar regarding customer suggestions), 12.11 (Eclipse will provide information to Estar regarding consumer complaints), 12.13 (Eclipse will provide any post-marketing studies to Estar). Moreover, as RegenLab points out, Estar also may have developed this knowledge from direct communications with New York users of the product, which also are provided for in the Distribution Agreement. *See* Pl's Jx Ltr. at 3 (discussing discovery regarding to Estar's communication with end-users); Distribution Agreement § 12.11 (Estar may resolve Eclipse customer complaints). RegenLab also is entitled to develop facts that might show Estar wanted its products sold in New York, notwithstanding Eclipse's ultimate control over whether or not to do so. *See, e.g., State Farm Fire & Cas. Co. v. Swizz Style, Inc.*, No. 15-cv-9432 (NSR), 2017

11

WL 1134766 (S.D.N.Y. Mar. 23, 2017) (jurisdiction over foreign manufacturer that did not have input or control regarding where distributor sold product, but targeted New York market and was aware of significant sales there).[6]

As to the second half of § 302(a)(3)(ii)—substantial revenue from interstate or international commerce—discovery is warranted for the reasons discussed above.

## CONCLUSION

RegenLab's requests for discovery in connection with Eclipse's and Healeon's motions to dismiss for improper venue and in connection with Estar's motion to dismiss for lack of personal jurisdiction are granted. The parties should meet and confer regarding the appropriate scope of discovery consistent with this Memorandum Order and submit a proposed discovery plan on or before September 7, 2017, including a schedule for briefing on the motions to dismiss. The Court denies the pending motions to dismiss without prejudice to refiling after the completion of jurisdictional and venue discovery. The Clerk of the Court is respectfully requested to close Docket Entry Numbers 42, 45, and 47.

**SO ORDERED.**

Dated: August 17, 2017
      New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**

---

[6] Discovery on this topic also will be relevant to the parties' arguments regarding the due process aspect of the personal jurisdiction inquiry.